THOMAS J. MESERVEY *& als. versus* JOSEPH E. GRAY *& al.*

Generally the legality of contracts is to be determined by the law of the place where they are made.

But, by virtue of § 27, c. 33, Public Laws of 1858, if a person purchase intoxicating liquors out of the State, with intention to sell any part thereof in violation of said chapter, the seller cannot recover the price of the liquors here, although he had no knowledge of the purchaser's intention.

ON REPORT.

ASSUMPSIT on an account annexed, which was as follows :
1864, Dec. 2, J. E. & E. Gray to T. J. Meservey & Co., Dr.

| | | |
|---|---|---|
| To balance of acc't, | | $224,00 |
| Int. on same to date, | | 6,00 |
| | | 230,00 |

The plaintiffs introduced the following order, signed by the defendants.

" Skowhegan, July 14, 1864.

"T. J. Meservey & Co.　Please send us a Bbl. of Whiskey and 15 galls. Gin."

Also a bill as follows :—

"Messrs. J. E. & E. Gray bought of T. J. Meservey & Co.

| | | | |
|---|---|---|---|
| 1 Bbl. old Bourbon Whiskey, | 41, | $3, | $123,00 |
| 25 Galls. Holland Gin, ½ Bbl., | | 4, | 100,50 |
| Cartage, | | | 50 |
| | | | 224,00" |

It appeared that the order was sent by defendants to the plaintiffs in New York; that the liquors were sent as by the bill, the defendants to pay cartage and freight; that the defendants were hotel keepers in Skowhegan, and purchased the liquors to sell to their guests; that they had no license except a U. S. license; and that the plaintiffs had no knowledge of the plaintiffs' intention to sell the liquors in violation of law.

The case was withdrawn from the jury and reported to the full Court.

*Coburn & Wyman*, for the plaintiffs.

*J. D. Brown*, for the defendants.

WALTON, J. — It is generally true that the legality of contracts is to be determined by the law of the place where they are made; and, if legal there, they are usually enforced everywhere. It was upon this ground that contracts for the sale of intoxicating liquors made in other States, where such sales were legal, were enforced in the Courts of this State, although such contracts if made here, would have been held illegal. *Torrey* v. *Corliss*, 33 Maine, 333.

But this rule is not obligatory. When contracts made in other States are designed or calculated to aid in violating the laws of the State where they are attempted to be enforced, the Courts of the latter State are not obliged to furnish a remedy. And, when it was seen that the liquor dealers of other States were abusing the principles of comity extended to them, and by sending runners into the State soliciting orders, and by every species of artifice in packing, directing and forwarding their liquors, were aiding and promoting an illegal traffic in this State, it was not only competent, but wise in our Legislature to pass a law declaring that they should receive no aid from our Courts in collecting pay for their liquors.

This was done in 1851, c. 211, § 16. And our present liquor law, (Act of 1858, c. 33, § 27,) declares that no action shall be maintained for intoxicating liquors purchased out of the State with intention to sell the same or any part thereof in violation of said Act.

In the case now before us, the plaintiffs are endeavoring to recover a balance alleged to be due them for intoxicating liquors purchased by the defendants, with the intention of selling the same in this State in violation of the provisions of said Act. Their claim, therefore, would seem to be one which the Courts of this State are expressly forbidden to enforce.

But the plaintiffs contend that, inasmuch as the sale was

made in New York, and they had no knowledge of the purchasers' intention to sell the liquors in this State in violation of law, their case does not fall within the provisions of the statute. But we think this proposition cannot be maintained. The cases cited in support of it being based on statutes very unlike the one now in force in this State, do not apply. It will be noticed that our present statute makes the fact that the liquors were purchased with the intention of selling them in violation of law, and not the seller's knowledge of the fact, the criterion by which to determine whether the contract will support an action in this State or not. The purchaser's intention, and not the seller's knowledge, is the point of inquiry. When dealing with citizens of this State, the seller must ascertain at his peril that the purchaser does not intend to sell the liquors here in violation of law. If, therefore, the sale was made in New York, and the plaintiffs had no knowledge of the illegal purpose of the defendants to sell the liquors in this State in violation of law, yet, inasmuch as the evidence satisfies us, as matter of fact, that they were intended for such illegal sale, the plaintiffs cannot recover for them.

On the bill introduced in evidence by the plaintiffs is a charge of fifty cents for cartage. All the rest of the account is for intoxicating liquors. We do not understand that the plaintiffs claim to recover for this item as for a separate and independent claim. If we understand their argument, it is referred to only to show that the liquors were delivered and the sale completed in New York. Besides, as there is only a single count in the plaintiffs' writ, and that is for " balance of account," and no bill of items is annexed, they are in no condition to claim to recover for a single item of their account. But a single promise is averred, and that is to pay the balance due on their account. In such a case, if any portion of the account is illegal, the plaintiff cannot recover. In fact, if a promissory note had been given for the balance, no part of it could be recovered. *Deering* v. *Chapman*, 22 Maine, 488. If a party has an account made up of

items, some of which are legal, and some of which are illegal, and he would recover for such as are legal, he must not blend the legal with the illegal, and sue for the balance; if he does he cannot recover. In fact, if he sues upon an account annexed, some of the items of which are illegal, he cannot recover unless he amends his writ by striking out the illegal items before he goes to trial. *Cochrane* v. *Clough*, 38 Maine, 25.                    *Plaintiffs nonsuit.*

APPLETON, C. J., CUTTING, DICKERSON, DANFORTH and TAPLEY, JJ., concurred.

---

THOMAS F. CHASE *& ux., in Eq., versus* ELBRIDGE G.
SAVAGE *& als.*

Immediately following the record of a notice for the foreclosure of a mortgage was the following certificate, signed by the register of deeds : — " Somerset, Feb. 15, 7 1-2 A. M., 1859. Received and copied the above notice of foreclosure from the Republican Clarion, a weekly newspaper printed at Skowhegan, in said county, bearing date Jan. 19, 1859, vol. 18, No. 32, having been published in said paper three weeks successively, as appears by papers shown at this office." In a bill in equity to redeem the mortgage : — *Held,* that the certificate of the register sufficiently indicated " the name and date of the newspaper in which" the notice " was last published."

The record of the notice of a foreclosure of a mortgage is the only proper evidence of the time when the " right of redemption will be forever foreclosed ;" and a person seeking to redeem a mortgage trusts to other sources for such information at his peril.

CUTTING, J. — BILL IN EQUITY to redeem a mortgage from one John Dinsmore and Chase, dated Oct. 2d, 1857, to Nicholas Smith, to secure a note to Smith of that date, payable in one year with interest, for the sum of $159.

In this suit, the principal question upon its merits is, whether or not the mortgage has been legally foreclosed. If so foreclosed, then the complainants have no equities,

and all other questions raised and discussed by the parties become immaterial.

It appears, that a process for foreclosure was instituted under the provisions of R. S., c. 90, § 5, which provides, that the mortgagee, after a breach of the condition, may give public notice in a newspaper printed in the county where the premises are situated, if any, or if not, in the State paper, three weeks successively, of his claim by mortgage on such real estate, describing the premises intelligibly, and naming the date of the mortgage, and that the condition in it is broken, by reason whereof he claims a foreclosure ; and cause a copy of such printed notice, and the name and date of the newspaper in which it was last published, to be recorded in each registry of deeds in which the mortgage deed is, or by law ought to be recorded, within thirty days after such last publication, — the certificate of the register of deeds shall be *prima facie* evidence of the fact of such publication of foreclosure. Section 6. The mortgager, or person claiming under him, may redeem the mortgaged premises within three years next after the first publication.

No objection has been made as to the legality of the notice for foreclosure, dated Jan. 3, 1859, but has been made as to the effect of the register of deeds' certificate, who certifies as follows, to wit :—

"Somerset, Feb. 15, 7½ A. M., 1859. Received and copied the above notice of foreclosure from the Republican Clarion, a weekly newspaper printed at Skowhegan, in said county, bearing date Jan. 19, 1859, vol. 18, No. 32, having been published in said paper three weeks successively as appears by papers shown at this office.

"M. R. Hopkins, *Register.*"

The only objection taken to this certificate of the register is that he does not certify in so many words " the name and date of the newspaper in which it was last published."

But it sufficiently appears that the name and date was given, and that the notice had been published three weeks

successively; the conclusion, therefore, is irresistible, that the certificate was made from the paper last published. *Certum est quod certum reddi potest.*

The antecedent of a weekly paper published on the 19th, must have been published on the 12th and the one next prior to that on the 5th of January, 1859, from which time the foreclosure commenced, and became absolute on January 5th, 1862, the three years for the redemption having then terminated.

*J. H. Webster*, for the complainants.

*D. D. Stewart*, for the respondents.